IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SEAN PATRICK MCDONALD,        )

                        )

        Plaintiff,        )

                        )

        v.        )     Civil Action No. 25-01174

                        )     Judge Nora Barry Fischer

FRANK BISIGNANAO,        )     Docket No. 11

Commissioner of Social Security,        )

                        )

        Defendant.        )

**<u>MEMORANDUM OPINION</u>**

## I.    INTRODUCTION

Sean Patrick McDonald  ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 1318-1383 (the "Act"). (Docket No. 11 at 1).  Now pending before the Court is Plaintiff's Motion for Summary Judgment (Docket No. 12), which has been fully briefed. (Docket Nos. 14-15).

## II.    PROCEDURAL HISTORY

On December 30, 2022, Plaintiff filed an application for the aforesaid social security benefits, alleging disability based on mental health impairments, and as of September 30, 2016, which was also his date last insured.  *See* Administrative Transcript, Docket No. 5 (hereafter "Tr."); *id.* at 328 (Plaintiff's January 6, 2024 disability report form, identifying "all the physical or mental conditions . . . that limit your ability to work" as "generalized anxiety disorder, chronic

depression, bipolar, PTSD and drug addiction").[1]  His application being denied by the Social

Security Administration (the "SSA") during 2023 at the initial and reconsideration levels of

review, it then proceeded to telephonic Administrative Law Judge ("ALJ") hearings before ALJ

Kelli J. Kleeb on March 1, 2024 – at which Plaintiff, represented by his present counsel; his

treating psychiatrist, Dr. Grace McGorrian; and a vocational expert, Carmine Abraham, testified -

and March 13, 2024 – at which ALJ Kleeb heard supplemental testimony from Plaintiff.  (Docket

No. 12 at 7-8; Tr. at 19, 43-133, 189-97, 201-03, 295-308, 318)).  On July 3, 2024, ALJ Kleeb

issued a detailed Decision finding that Plaintiff had not established disability under the Act

during the relevant period (from the date of a prior denial of benefits in November 2021 through

the date of her decision) and denying his application. (Tr. at 13-33).[2]  The Appeals Council

thereafter denied Plaintiff's request for review, rendering the ALJ's Decision final pursuant to 20

C.F.R. §  404.981.  (Tr. at 1-3, 32-64; Docket No. 12 at 1). Plaintiff filed suit in this Court on

August 4, 2025 seeking reversal or remand.  (Docket No. 1, 3).

The issues at hand are whether (a) the correct legal standards were employed, and (b)

substantial evidence exists in the record to support the ALJ's Decision.  On deferential review

and as more fully set forth below, the Court finds that the administrative record sufficiently

supports the ALJ's Decision, and that the proceedings and determinations complied with the

---

[1] A certified copy of the transcript of the complete administrative proceedings was made of record at Docket No. 5 as follows: 5-1 Court Transcript Index; 5-2 pp. 1-133; 5-3 pp. 134-85; 5-4 pp. 186-294; 5-5 pp. 295-322; 5-6 pp. 323-81; 5-7 pp. 382-733.

[2] Importantly, Plaintiff previously filed applications for DIB and SSI in December 2019, alleging disability beginning September 30, 2016.  On November 15, 2021, he received an unfavorable decision from ALJ Dennis Cohen denying these claims through that date, and his appeal was then also denied. (Tr. at 137-57).   ALJ Kleeb found no grounds to reopen and revise the prior decision.  She therefore denied any implied request to do so in the context of Plaintiff's pending claim, and limited consideration of Plaintiff's entitlement to benefits to the period beginning November 16, 2021. (Tr. at 17-18). Plaintiff does not contest that portion of the Decision *sub judice*.  (Docket No. 12).  *See also* Section V at 10, n. 15, *infra*.

applicable standards.  Plaintiff's Motion for Summary Judgment [11] is accordingly denied and judgment granted in favor of the SSA/Commissioner.

## III.   FACTUAL HISTORY

The relevant factual history, as set forth in the Administrative Transcript and summarized in Plaintiff's Brief in Support, includes the following medical records and testimony:

Plaintiff received inpatient mental health treatment for drug overdoses in November 2015 and March 2017 - for five and seven days, respectively, with diagnoses including major depressive disorder - and was admitted again in June 2019 with suicidal ideation and discharged to outpatient treatment.  His outpatient records report symptoms of depression, generalized/social anxiety disorders, post traumatic stress and bipolar disorders, opiate addiction in remission on suboxone, and alcohol dependence.[3]  (Docket No. 12 at 2-3) (citing Tr. at 482-89, 551-59, and 673-86).

---

[3] During the last admission, Plaintiff reported back fractures sustained in a 2008 motor vehicle collision and the prescription of oxycontin, the discontinuation of which led to his heroin addiction prior to being prescribed suboxone. (Tr. at 490-504).  Mild thoracic spine compression deformities were noted at the time of Plaintiff's September 2016 emergency room treatment for facial bone fractures and other injury resulting from being mugged/assaulted. (Tr. at 447-481).  *Cf.* Docket No. 12 at 11.

The only other physical health records included reference Plaintiff's increasing symptoms of left hand carpal tunnel syndrome (July and December, 2017) and release surgery (March 2018), and his prior right hand syndrome and successful release surgery in 2010.  (Docket No. 12 at 7, 12) (citing Tr. at 56-59, 447-481, 522-39, 731).  *Cf.* Docket No. 12 at 12 ; Tr. at 56-62 (Plaintiff's close of hearing testimony that he had (a) symptoms of recurring left hand carpal tunnel syndrome in the last six months that he felt would require a second surgery, and (b) constraints on walking more than 15 minutes, sitting more than an hour and weight-bearing more than 15 lbs. due to his compression fractures - but had not seen a doctor for either).

The Court observes that Plaintiff's brief in support of reversal/remand, in this claim brought solely on the basis of mental health impairments (Tr. at 328), provides a six-page review of his mental health treatment, followed by two paragraphs noting that the Administrative Record "also includes records related to physical impairments", *i.e.*, the above-noted September 2016 emergency room record and those regarding his 2017-18 interval of increasing left hand symptoms and carpal tunnel release surgery.  No other medical records were presented as to either (Docket No. 12 at 2-7).  *See also* Section V, *infra*.

From the time of his second hospital admission (March 2017) through February 2020, Plaintiff saw, and was prescribed medication by, his primary care physician approximately two to four times per year.  From May 2020 through January 2022, he was psychologically evaluated and seen in follow-up four to five times per year by Stephen Zerby, M.D., whose diagnoses included major depressive disorder and generalized anxiety disorder, and who noted Plaintiff's frequent reporting of lethargy, restlessness and anxiety. On February 8, 2021, Dr. Zerby wrote that Plaintiff "is afflicted with a mental/emotional condition of indefinite duration that affects his ability to live and function independently on a chronic, ongoing basis."  Dr. Zerby did not specify either a degree of affliction or effect(s). (Docket No. 12 at 3-4) (citing Tr. at 549-88).  Also in Spring 2020, Plaintiff received drug and alcohol treatment through ARC Manor Addiction Recovery Center, where he was seen in weekly sessions by Dr. Grace McGorrian, his treating psychiatrist, who opined in a January 6, 2021 letter to his case manager that Plaintiff continued to struggle with panic symptoms even on suboxone, and should qualify for SSI on a psychiatric basis as his symptoms and history prevented his successfully seeking employment. (*Id.* at 4-5) (citing Tr. at 545-46).[4]

Approximately one year later, in February 2022, Plaintiff discontinued seeing Dr. Zerby and resumed treatment with Dr. McGorrian, now through the Family Counseling Center of Armstrong County, with evaluation and follow-up appointments three to four times per year until February 2024. During that time, Dr. McGorrian completed "disability questionnaires" dated February 8, 2023, November 13, 2023 and February 14, 2024. In 2023, she indicated that

---

[4] *Cf.* Tr. at 25 (ALJ's correct observation that "[a] decision or statement by a governmental agency or a nongovernmental entity, about whether the claimant is disabled, employable, or entitled to any benefits is not binding on the undersigned" and that "a statement of disability is . . . an issue reserved to the Commissioner of Social Security") (citing 20 CFR 404.1504, 404.1520a(c) and b(c)).

Plaintiff had predominantly "moderate" (or mild) limitations, but "marked" impairments in responding appropriately to work pressures, changes, and behavioral/social interactions; would need to miss one or one to two days of work per month; and could not obtain/sustain full-time employment. On February 16, 2024, however, Dr. McGorrian indicated that Plaintiff had "marked" impairments in responding to pressures and interacting with the public, "moderate to marked" impairments in interacting with supervisors and co-workers, responding to changes, emotional stability and reliability; and would need to miss five days of work per month (including two to attend drug and alcohol treatment appointments). (*Id.* at 5-6) (citing Tr. at 420-33, 590-93, 724-27). *But see* Tr. at 25-26; *id.* at 25 (noting Dr. McGorrian's February 8th treatment record of Plaintiff's statements that he was "not as stable as [Dr. McGorrian had] recorded" and felt his impairments were "marked"). During her Hearing Testimony, Dr. McGorrian endorsed Plaintiff's being compliant with drug treatment since 2019 and her assessment of a GAF (Global Assessment of Functioning) of 48. (*Id.* at 10, 12) (citing Tr. at 46-49, 111-14). She also noted that Plaintiff had depressive mood and post traumatic stress disorders, chronic anxiety (including in response to job pressures, interactions or perceived criticisms), and opiate dependence in long-term medication-assisted remission. (*Id.* at 8) (citing Tr. at 100-101).[5]

## IV.   STANDARD OF REVIEW

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he cannot engage in "substantial gainful activity" because of a medically determinable (physical or

---

[5] Plaintiff's own hearing testimony was that he has panic attacks one to two times per month, lasting "at least" an hour, and relieved in a dark and quiet setting, and that those attacks had been diminishing. Plaintiff also testified that it is primarily chronic social anxiety that keeps him from working. (Docket No. 12 at 12) (citing Tr. 51-53, 56). At the time of his hearings, Plaintiff had remained unemployed since 2016. (Tr. at 23).

mental) impairment (an "MDI") which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).  When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs available in the national economy.  *See e.g., Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  *See also* Tr. 18-20.

The Court's review of the agency's final decision is plenary for questions of law. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  It reviews the ALJ's findings of fact for "substantial evidence" and reviews the administrative record as a whole.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g));[6] *Burns v. Barnhart,* 312 F.3d

---

[6] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil

113, 118 (3d Cir. 2002); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).  This evidentiary threshold is not high, and "substantial evidence" means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek,* 139 S. Ct. at 1154; *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  If the ALJ's decision is supported by such evidence, it is conclusive.[7]  The Court may not "set aside" the decision "even if this Court 'would have decided the factual inquiry differently.'"  *Hansford v. Astrue*, 805 F. Supp. 2d 140, 143 (W.D. Pa. 2011) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).[8]

## V.    ANALYSIS

The Decision rendered by ALJ Kleeb found that Plaintiff (1) did not engage in substantial gainful activity during the relevant period of November 16, 2021 through July 3, 2024; (2) had the severe impairments of generalized anxiety disorder ("anxiety"); depression; bipolar; post-traumatic

---

action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

[7] As the Supreme Court has explained, however, the ALJ must provide a satisfactorily clear articulation of the basis for her conclusions:

An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U. S. 414, 423, 141 S. Ct. 1150, 209 L. Ed. 2d 287 (2021).  In reviewing an agency's action under that standard, a court may not "'substitute its judgment for that of the Agency.'" *FCC v. Fox Television Stations, Inc*., 556 U. S. 502, 513, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009).  But it must ensure, among other things, that the agency has offered "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

*Ohio v. EPA*, Nos. 23A349, 23A350, 23A351, 23A384, 2024 U.S. LEXIS 2846, at *18 (June 27, 2024); *see also Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).

[8] As the Supreme Court reiterated in *Ohio v. EPA, supra*, when considering a case, a district court can neither conduct a *de novo* review of the decision nor re-weigh the evidence of record.  It must judge, under the applicable standard, the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfe*l, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp*., 332 U.S. 194, 196–97 (1947).

stress disorder ("PTSD"); and neurocognitive disorder;[9] (3) did not have an impairment or combination of impairments meeting or equaling the severity of one of the criteria listed;[10] (4) had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following non-exertional limitations: limited to simple, routine tasks with simple, work-related decisions; occasional interaction with supervisors and coworkers with no tandem tasks, and no interactions with the public; and . . . few changes to work process and setting", a determination which precluded performance of his past relevant work (as a cook, home health aide, and milling machine operator);[11] but (5) retained the capacity to perform other work existing in

---

[9] The ALJ further found - on review and consideration of all the medical evidence in Plaintiff's file - that he has "several medically determinable impairments that are non-severe in nature", including substance and alcohol use disorders; but that "while his longitudinal medical history reflects prior challenges with the same, including past inpatient hospitalizations and emergency department visits for [issues including] mental impairments, suicidal ideations and/or attempts, and instances of assaults while intoxicated, he has maintained sobriety since July 2019" and had no further such hospitalizations. (Tr. at 20, 23) (citing Hearing Testimony).

The Decision also observed that although Plaintiff "asserted challenges with his left upper extremity, following a carpal tunnel release surgery in March 2018", he also indicated that it only in the last six months bothered him once or twice a week, he continued to practice with his band and play guitar and drums weekly, and he had not sought treatment or evaluation from a medical provider. ALJ Kleeb thus concluded that "the claimant's objective medical evidence does not support continued issues relative to his left upper extremity, nor does it meet the durational requirement." (*Id.* at 20-23) (citing Hearing Testimony).

[10] The Decision correctly notes that to satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning, and that a marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. ALJ Kleeb concludes that Plaintiff has *moderate* limitations in "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself", noting that treatment records indicate generally normal mental status findings - "assessed as within normal limits for perception, thought content, cognition, insight; judgment assessed between within normal limits and a mild impairment; and an above average estimate of intelligence" - during the relevant period, "particularly considering his sobriety and use of prescription medications for his mental impairments"; and that while he was described as "somewhat disheveled" in appearance, he had been assessed with a "very good intellect" and as "bright and articulate"; lives with his wife and cats; and "did not return function report questionnaires that would provide additional insight as to his activities of daily living and personal care, as well as his work history." She also concludes the Plaintiff failed to establish the "paragraph C" criteria as "the record does not reflect only a minimal capacity to adapt to change in environment, or demands that are not already part of the claimant's daily life." (Tr. at 21-22) (record citations omitted).

[11] *See* Tr. at 22-25 (ALJ Kleeg's detailed explanation of the process and bases of her findings at step (4)). More particularly, the ALJ considered and canvassed Plaintiff's severe and non-severe MDIs and Plaintiff's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p", as well as "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." In following the prescribed two-step process, the ALJ identified the underlying medically determinable

8

the national economy.[12]  Plaintiff's claim was therefore denied at step (5).  *See generally* Tr. at 13-33.

While not unsympathetic to Plaintiff's mental health history, the Court must, under the applicable standard, reject Plaintiff's contentions of error warranting reversal or remand and affirm the ALJ's Decision.  It does so on the basis of (a) its review and above explication of the Decision challenged, and (b) largely in agreement with the citations to substantial evidence in the Administrative Record and summation of the ALJ's findings presented by Defendant.  (Docket No. 14).[13]  In further response to Plaintiff's averments of error, the Court observes that:

(1) Plaintiff's first objects to ALJ Kleeb's failure to include his carpal tunnel syndrome as a "severe" impairment, address his thoracic vertebral fractures, or include any related limitations in the RFC.  (Docket No. 12 at 13-14).  As detailed in Section III and the Decision, however, apart

---

mental impairment(s) as ones that could be both (a) "shown by medically acceptable clinical or laboratory diagnostic techniques" and (b) "reasonably expected to produce the claimant's pain or other symptoms."  She then considered, in her RFC assessment, the extent to which the "intensity, persistence, and limiting effects" of Plaintiff's symptoms of those MDIs impacted his work-related activities and, in so doing, the extent to which Plaintiff's own statements about those effects were substantiated by objective medical or other evidence in the record. (*Id.*).

In finding Plaintiff's statements "not entirely consistent with" the other evidence of record, ALJ Kleeb discussed at length the findings of both State agency psychologists (Dr. Rings on initial review and Dr. Gavazzi on reconsideration), and each of the statements provided by Dr. McGorrian, and placed them in context with the medical examinations/evidence underlying each opinion, as well as with Plaintiff's mental health record during the relevant period as a whole.  The ALJ noted, *e.g.*, some deficiencies of contemporaneous treatment/records supporting Dr. McGorrian's findings of "marked" limitations, Plaintiff's "relatively normal mental health evaluations" in the relevant period, the tension between Dr. McGorrian's findings and her recently preceding treatment records, and Plaintiff's February 2024 subjective statements that he was "much worse" and his "symptoms were more severe in a number of areas" than she had been reporting, *i.e.*, they were "marked".  On the basis of this review, ALJ Kleeb concluded that Plaintiff presented with moderate limitations, as she then reflected in the RFC.  (*Id.* at 24-26).  *See also* pp. 4-5, *supra*, and discussion, *infra*.

[12] *See* Tr. at 26-27 (finding Plaintiff to be, at age 37, a "younger" individual under the Act, with at least a high school education, and able, with his non-exertional limitations, to perform jobs existing in significant numbers in the national economy, such as hand packer, dryer attendant and janitor, all work performed at a medium exertional level).

[13] *Id.* at 1 (averring that the ALJ "reasonably determined that Plaintiff had the residual functional capacity (RFC) to perform a range of unskilled work.  Substantial evidence supports the ALJ's fact-finding, including multiple benign objective findings, evidence of improvement in symptomology with treatment, Plaintiff's ability to engage in meaningful daily activities, and the prior administrative medical findings that found Plaintiff capable of simple work.").

from Plaintiff's hearing testimony that he was (a) recently experiencing a return of carpal tunnel symptoms and (b) had constraints on walking more than 15 minutes, sitting and weight-bearing due to his compression fractures,[14] the Administrative Record is devoid of medical/other evidence that Plaintiff sought or received, *e.g.*, consultations, testing or treatment as to either recent carpal tunnel or vertebral fractuce/back symptoms during the relevant period. This is unsurprising in a claim that sought benefits solely on the basis of mental health disorders/disability and proceeded with representations by Plaintiff that he had no new conditions/impairments.[15]  In addition, although Plaintiff submitted significant pages of mental health records in support of his application, and was permitted to submit additional medical records on extension after the hearings, no evidence whatsoever was provided to corroborate Plaintiff's later assertions of physical constraints arising from recurrent carpal tunnel symptoms or vertebral fractures.  *See* Tr. at 380-81 (April 18, 2024

---

[14] *See* Section III at 3, n.3, *supra*.  *But see* Tr. at 23 (Plaintiff reported often taking daily walks with his wife).

[15] *See* Section II at 1-2, *supra*; Docket No. 14 at 4-6 (noting that Plaintiff raised no allegation of physical work impairments in his application, initial or reconsideration levels of review); *see also* Tr. at 163 (State Agency Initial Determination on Plaintiff's claim for benefits filed December 30, 2022, on basis of generalized anxiety and bipolar disorders, depression, PTSD and drug addiction); Docket No. 14 at 5 (noting that "throughout the initial and reconsideration levels of review, when asked whether his medical conditions had changed and whether he developed any new conditions, Plaintiff repeatedly answered 'no'") (citing Tr. at 338, 347); *id.* ("At the administrative hearing held on March 1, 2024, Plaintiff's counsel for the first time stated that Plaintiff "also has some limited physical impairments" but that "clearly his main impairment and the reason that he is disabled is because of his mental impairments"") (citing Tr. at 90).

In contrast, Plaintiff's *prior* application for benefits for the period of September 2016 through November 2021 included physical impairments attributed to severe symptoms of carpal tunnel syndrome/surgery (2017-18) and fractured vertebrae as additional bases of disability.  ALJ Cohen's November 15, 2021 Decision, while finding a number of severe mental health impairments (including post-traumatic stress, generalized anxiety and bipolar disorders, as well as a history of alcohol and substance abuse), denied Plaintiff's benefits on findings of the availability of work within his RFC.  In so holding, ALJ Cohen was "partially persuaded by the State agency medical consultants' opinions in that the absence of longitudinal subjective complaints, treatment, or clinical abnormalities relative to carpal tunnel syndrome support no manipulative limitations" but nonetheless limited his RFC to "medium work that involves no more than frequent postural maneuvers . . . [to accommodate] any reasonable limitation stemming from this condition."  The ALJ - noting that Plaintiff made no complaints of any functional limitations or any requests for treatment related to back pain to his PCP or examiners during the relevant period – indicated he was generally persuaded by the examining physician's opinion that the evidence,  including her own examination showing normal musculoskeletal and neurological functioning, "supported an ability to perform a range of heavy work", subject to the restrictions imposed in consideration of his carpal tunnel syndrome. (Tr. at 134-53; id. at 140). *Cf. supra* n. 2.

correspondence with Plaintiff's counsel granting a final extension to April 30, 2024 to submit any additional evidence); Docket No. 14 at 4-6.[16]

As noted above, Plaintiff's subjective complaints alone cannot establish disability; rather, the regulations' two-step process requires: first, (a) objective clinical signs and laboratory findings demonstrating the existence of an MDI that (b) could reasonably be expected to produce the alleged symptoms, and then second, as to that MDI, the extent to which the claimant's statements of work-related impairment are medically supported. (Docket No. 14 at 5-6) (citing 20 C.F.R. §§ 404.1529(a, b), 416.929(a, b); *see also, supra*, n. 11. Here, the ALJ considered the limited medical records presented regarding Plaintiff's 2017-2018 carpal tunnel syndrome and surgery and concluded that they did not support his assertion of left arm/hand symptoms recurring in the past six months, nor would such window meet the durational requirement. *See supra*, n. 9.

In addition, ALJ Kleeb was not required to address Plaintiff's newly-raised assertion of impairments from vertebral fractures allegedly shown on his 2016 CT, where he elected to submit no medical records, function report questionnaires, or other evidence in support. *See Hur v. Barnhart*, 94 Fed. Appx. 130, 133 (3d Cir. 2004) (finding no error where ALJ did not "discuss, or even mention, the x-rays showing degeneration of [claimant]'s spine", despite claimant's attribution of disabling pain, where record reflected no subsequent tests, treatment, or medication prescribed on the basis of spinal condition shown); *id.* (noting that there is no requirement that an ALJ discuss every piece of evidence in the record so long as her decision, read as a whole, illustrates that she considered the appropriate factors and her determination was supported by substantial

---

[16] *See also* Docket No. 14 at 5 (noting the 2016 CT scan reported "remote appearing mild superior endplate compression deformities" though "no convincing CT evidence of acute vertebral fracture or traumatic malalignment" (citing Pl.'s Br. at 13-14; Tr. at 477-78) and that the evidence "documenting Plaintiff's physical functioning routinely demonstrated normal musculoskeletal strength, range of motion, and appearance") (citing Tr. at 449, 667, 681, 697)).

evidence in the record) (citing *Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir. 2001)).  *See supra*, at 13, n. 20, *infra.*[17]

The Court rejects Plaintiff's request for remand on these grounds for these reasons.  Plaintiff simply did not (and could not) demonstrate that he was prejudiced by or otherwise entitled to remand due to the ALJ's determinations as to his asserted carpal tunnel syndrome or omission of discussion of his vertebral fracture complaints.[18]

(2) Plaintiff next objects that the ALJ improperly disregarded the opinion of his treating psychiastrist, Dr. McGorrian.    While then acknowledging that the ALJ summarizes Dr. McGorrian's letter and disability questionnaires, Plaintiff objects to the ALJ's asserted failure to (a) sufficiently consider Dr. McGorrian's reports and hearing testimony, including their "consistency and supportability" and GAF findings, and (b) give her opinions the "substantial weight" due.  (Docket No. 12 at 14-16).  To the contrary, however, the ALJ's Decision reflects her detailed consideration of both Dr. McGorrian's written records and testimony – in context encompassing their "consistency" and "supportability", and with substantial reference to the record

---

[17] *See also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (remand to ALJ to explicitly consider claimant's obesity was not warranted where it would not affect outcome and, although claimant alleged obesity made it more difficult to stand and walk, none of the extensive medical evidence on which the ALJ relied as basis for findings of limitations/impairments suggested or supported obesity as an MDI). *Cf. Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (the regulations require that claimant's subjective complaints be substantiated by the presentation of medical evidence, and where claimant fails to meet this obligation as to a complaint there is nothing which the ALJ is required to rebut).

*Compare, e.g.*, *Hammond v. O'Malley*, 735 F.Supp.3d 567, 579 (E.D. Pa. 2024) (failure to mention and consider claimant's PTSD as an MDI warranted remand where record contained repeated references to "medically diagnosed" PTSD); i*d.* (noting that ALJ is not required to submit to vocational expert every impairment alleged by claimant, but must accurately convey all of claimant's credibly established limitations).

[18] As referenced above, the assessment of an MDI and the substantiation of Plaintiff's statements regarding attributed symptoms are delegated to the ALJ, subject to the Court's deferential review.  *See* Section IV, *supra*; *id.* at 8, n. 11; *Tr.* at 24-26 (finding Plaintiff's subjective statements "not entirely consistent with" the medical and other record evidence for reasons discussed).

Finally, Plaintiff's analysis also appears to reflect some confusion regarding the application and effect of the standard pertinent to an ALJ's dismissal of a claim at step 2, under which any doubt as to a showing of qualifying impairment is resolved in the claimant's favor. (Docket No. 12 at 13-14).

as a whole - in the course of determining Plaintiff's RFC and qualification for benefits. *See supra* at pp. 8-9, nn. 10-11*; id.* at 11 (highlighting the Decision's identification of deficiencies of support, inconsistencies with other records, and some findings' apparent basis/revision on Plaintiff's subjective statements); Tr. at 22-26. *See also* Docket No. 14 at 9 (citing *Zaborowski v. Comm'r of Soc. Sec.*, 115 F. 4th 637, 639 (3d Cir. 2024) (ALJ sufficiently supported her findings by "weav[ing] supportability and consistency through her analysis")). Moreover, under the updated medical evidence regulations (applicable to claims filed after March 27, 2017), an ALJ considers the persuasiveness of the opinions and prior administrative medical findings instead of assigning them weight, as was required under the previous regulations.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).[19] More generally, and as noted *supra*, the Court reviews the ALJ's findings of fact for "substantial evidence" and reviews the administrative record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).[20]

(3) Although Plaintiff raises three more objections - *i.e.*, that ALJ Kleeb lacked substantial evidence for her RFC (Docket No. 12 at 16-17),[21] improperly evaluated Plaintiff's mental health impairments, disregarding his suggestive complaints (*id.* at 19),[22] and improperly disregarded the

---

[19] The two most important factors in determining the persuasiveness of an opinion or prior administrative medical findings are indeed, under the new regulations, consistency and supportability. Less important factors include the source's relationship with the claimant; the source's specialization; and other factors, such as familiarity with other evidence in the claims folder and familiarity with the disability program. *Id. See also* Docket No. 14 at 6-9.

[20] *See also* Docket No. 14 at 7 ("[T]he new regulations were designed to be consistent with a "reasonable articulation standard" that "does not require written analysis about how [the adjudicator] considered each piece of evidence") (citing  82 Fed. Reg. 5844-01, at 5858); *id.* at 9 ("[A]lthough Plaintiff may have preferred a more granular analysis, . . . [the regulations] impose a "reasonable articulation standard," which only requires that the ALJ provide enough explanation to permit "a reviewing court to trace the path of an adjudicator's reasoning."). *Cf.* Section IV, *supra*.

[21] *Cf.* Docket No. 14 at 9 ("[Plaintiff's] argument is merely a reiteration of his first two points of contention.  At any rate, substantial evidence supports the ALJ's RFC evaluation."); *id.* at 9-11 (correctly summarizing said substantial evidence).

[22] *See* extensive discussion of Plaintiff's subjective complaints, *supra*. *Cf.* Docket No. 14 at 11-13 (recounting portions of Decision and cited record evidence contradicting Plaintiff's assertion that ALJ Kleeb provided "very little in support of h[er] conclusion that Plaintiff's testimony was not credible").

Vocational Expert's testimony and relied on an incomplete hypothetical (*id.* at 20)[23] - each relies largely on the same assertions of error made in Plaintiff's prior two objections.[24]  As explicated in the preceding text and footnotes to Section V, each of these additional objections is more than adequately addressed above and in Defendant's Brief in Opposition.[25]

**VI.   CONCLUSION**

In sum, the Court has applied the applicable standard and finds that the ALJ's Decision (a) properly included, considered and referenced the evidence relating to Plaintiff's subjective reporting, symptoms, medical conditions, and limitations during the relevant period, (b) sufficiently explained the ALJ's reasonings and findings to permit the Court's meaningful review, (c) included related reasonably demonstrated limitations during the period at issue in its RFC, and (d) based its denial of benefits on substantial evidence found and reasonable determinations made. *See* Sections IV and V, *supra*.  Plaintiff's Motion for Summary Judgment [11] is therefore denied and the decision of the SSA/Commissioner is affirmed.  An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  March 16, 2026
cc/ecf:  All counsel of record.

---

[23] *Cf.* Docket No. 14 at 13 ("Plaintiff's last argument is, in essence, a renewed challenge to the ALJ's RFC finding, albeit in an alternate format (Pl.'s Br. at 19-20).  The Court should not be persuaded."); *id.* (the ALJ is required to submit to the vocational expert only those limitations that are credibly established by the record").  *Cf. also supra,* n. 17.

[24] More particularly, Plaintiff contests the ALJ's asserted "failures" to, e.g., (a) include exertional limitations based on Plaintiff's vertebral fractures; (b) "consider" Dr. McGorrian's reports/testimony, (c) show a "rational basis" for finding less than the full extent of Plaintiff's subjective reporting of symptoms credible, and (d) find Plaintiff disabled under the Act, in accordance with vocational expert testimony that could favor that finding had the RFC been premised on Dr. McGorrian's questionnaire responses.

[25] The Court notes that Plaintiff's analysis also appears to reflect some confusion regarding (a) the Commissioner's obligation, at step 5, to show that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs available in the national economy, as opposed to (b) the claimant's obligation to provide, through the Administrative Record, medical and other evidence relied upon by the Commissioner  to assess the nature and extent of the claimant's limitation(s). *Cf., supra,* at 11-12.